UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

EZEKIEL MCCARTHY, et al.,                      )
                                               )
                    Plaintiffs,                )
                                               )
          v.                                   )        No. 1:24-cv-02268-JRS-MJD
                                               )
JETT TRUCKING LLC,                             )
                                               )
                    Defendant.                 )

**ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to Disclose Rebuttal

Expert.  [Dkt. 69.]  The motion is fully briefed, and the Court, being duly advised, **GRANTS**

Plaintiffs' motion for the reasons set forth below.

**I.  Background**

This case arises out of a motor vehicle accident between Plaintiff Ezekiel McCarthy and

an employee of Defendant.  The parties dispute who was at fault for the accident.  Plaintiff

served the liability expert report of Steve Grundhoefer on October 6, 2025.  Defendant served the

liability expert report of Dr. Sandra Metzler on November 4, 2025.  One of the opinions

expressed by Dr. Metzler in her report was the following:

> [T]he Crown Victoria driven by Officer McCarthy in the subject accident was
> inspected on May 12, 2025, and both the airbag control module (ACM) and the
> powertrain control module (PCM) were downloaded. These two data acquisition
> systems (ACM and PCM) use sensors embedded within the vehicle to measure
> vehicle speed and acceleration over time, and the ACM utilizes data analysis
> algorithms to evaluate the data and determine whether the vehicle has experienced
> accelerations that indicate a collision has occurred, and whether the data indicates
> that the airbag systems should be actuated and if appropriate to actuate the airbags.
> As part of the data analysis and recording, the ACM and PCM use the data to
> estimate what is known as the zero timepoint, $t = 0$, for a crash pulse, which is
> considered as the time at which a vehicle impact has begun. In a sliding, sideswipe

type of impact such as that experienced by the Crown Victoria in the subject accident, the precise zero timepoint for the impact has a high degree of uncertainty. This is due to the nature of the collision which is a sliding contact, multi-peak, gradual engagement type of contact with mixed lateral-longitudinal acceleration components.

The vehicle data analysis algorithms indicated that braking began approximately 4.8 to 5.0 seconds prior to what the system determined to be t = 0, the zero timepoint. As noted previously, research literature has shown that the zero timepoint in a sideswipe accident is often not well aligned with the actual time of initial vehicle contact with the external object, in this case the rear of the trailer.

[Dkt. 69 at 17.]  Plaintiffs deposed Dr. Metzler on January 28, 2026.  Prior to the deposition,

counsel had determined that the literature cited in Dr. Metzler's report did not support the opinion

quoted above.  When questioned on that point, Dr. Metzler testified:

It's not a page or a literature.  It's all of that literature, all of the content in there. You would need to read it and understand it.  And all of that combined with my knowledge, my engineering training—I mean, this is, you know, why we have experts because I understand maybe these concepts are a little, you know, obscure or a little more detailed and technical than would be intuitively obvious to the layperson. But, you know, what I'm telling you is that given the functionality of airbags, the constraints, limitations and amounts of uncertainty with their performance and then given the physics of some of the types of impacts that we have that are things like multiple impacts, narrow objects, small overlap, long crash pulses, that is what that statement is synthesizing and describing and applying to this particular situation.  So it's a synthesis of all that and an application of it to here.  So will you go find that sentence somewhere else?  No, because no one else has gone through and done this analysis of this exact accident for this exact purpose.  But that language I've used there is, you know, based on the science, the literature.

[Dkt. 69-6 at 14.]

## II.  Discussion

On February 18, 2026, Plaintiffs filed the instant motion, seeking leave to designate

Richard Ruth, P.E., as a rebuttal expert to rebut the opinions of Dr. Metzler.  [Dkt. 69.]  Plaintiffs

were required to seek leave to designate a rebuttal expert because they did not do so by the

deadline set forth in Federal Rule of Civil Procedure 26(a)(2)(D)(ii).  Plaintiffs must therefore

show excusable neglect for the late designation.  *See* Fed. R. Civ. P. 6(b)(1)(B).  "'[E]xcusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant.'"  *Mayle v. State of Illinois*, 956 F.3d 966, 969 (7th Cir. 2020) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 392 (1993)).  "To find 'excusable neglect,' courts should consider all relevant circumstances surrounding the party's neglect, including the prejudice to the non-movant, length of delay, and reason for delay."  *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020) (citing *Pioneer Inv. Servs.*, 507 U.S. at 395)).  Also relevant is "the court's 'strong policy preference for deciding cases on the merits.'"  *Harris v. Melchor*, 2025 WL 972467, at *3 (7th Cir. Apr. 1, 2025) (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009)).

The Court, in its discretion, finds that Plaintiffs have satisfied the excusable neglect standard in this case.  Plaintiffs explain that they did not disclose a rebuttal expert by the applicable deadline because, upon reviewing Dr. Metzler's report, they did not believe they needed one:

> After obtaining Dr. Metzler's report and reviewing the literature she cited, *see* Ex. 2, Dr. Metzler Report at 2-3, Plaintiffs' counsel noticed that (1) none of the papers cited by Dr. Metzler state that the precise zero timepoint for a sliding sideswipe impact, or any impact that fits this crash, has a high degree of uncertainty; and (2) there is no research cited by Dr. Metzler or anyone stating that the zero timepoint in a sideswipe crash, or any impact that fits this crash, is often not well aligned with the actual time of initial contact with the external object. . . .  Based on the apparent lack of support for Dr. Metzler's report's opinions in the literature she relies on, Plaintiffs' counsel intended to confirm their understanding of the literature during a deposition and then ask the Court to exclude Dr. Metzler's corresponding opinions, in addition to other opinions.

[Dkt. 69 at 3.]  However, after Dr. Metzler's deposition testimony, in which she expanded the basis of her opinion beyond the cited literature, Plaintiffs determined that a rebuttal report was needed.  In other words, Plaintiffs explain that the deposition "was the first time Dr. Metzler

indicated she was not only relying on the unsupportive literature for her opinion that 'research literature has shown that the zero timepoint in a sideswipe accident is often not well aligned with the actual time of initial vehicle contact with the external object."" *Id.* at 7.

Plaintiffs certainly could have chosen to obtain a rebuttal report from Ruth simply based on Dr. Metzler's report. However, the Court finds it to be excusable that Plaintiffs' counsel chose not to undergo that expense given the manner in which Dr. Metzler supported her opinion in her report. Once Dr. Metzler expanded her justification for her opinion in her deposition, Plaintiffs' counsel's analysis understandably changed. The Court determines that the excusable neglect standard allows for an extension of the rebuttal expert deadline under the particular circumstances of this case.[1]

Defendant argues that granting the instant motion would severely prejudice Defendant. To ameliorate that prejudice, the Court hereby **REOPENS** discovery for the sole purpose of permitting Defendant to obtain Ruth's file—which Plaintiffs have agreed to produce—and depose Ruth. Plaintiffs shall produce Ruth's file **within seven days of the date of this Order** and the parties shall schedule Ruth's deposition to be conducted no later than **April 16, 2026**.

Any motion to limit or exclude Ruth's testimony shall be filed by **May 1, 2026**. The response to any such motion shall be filed **within seven days of the date of the motion**; any

---

[1] Defendant argues in its brief that the standard set forth in Federal Rule of Civil Procedure 37(c)(1)—that a party who fails to disclose a witness "is not allowed to use that . . . witness . . . unless the failure was substantially justified or is harmless" applies to this situation. Because Plaintiff has sought leave to disclose Ruth as a rebuttal expert after the deadline for doing so, the Court finds that Rule 6(b) is the applicable rule. However, the result would be the same were the Court to apply the Rule 37(c)(1) standard, given the justification Plaintiffs have given for their failure and the fact that the deadlines set forth in this Order eliminate any prejudice to Defendant, thus rendering Plaintiffs' untimely disclosure harmless.

reply shall be filed **within seven days of the date of the response**. Contrary to Defendant's argument, no continuance of the July 6, 2026, trial will be necessary.

SO ORDERED.

Dated:  23 MAR 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.